**CABLE NEWS NETWORK, INC.**

v.

**AMERICAN BROADCASTING COMPANIES, INC., et al.**

**CBS INC., et al.**

v.

**Ronald REAGAN, et al.**

**Civ. A. Nos. C81–871, C81–1329.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 2, 1981.

John J. Dalton, Robert L. Mote, Ralph H. Greil, Steven W. Korn, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff in No. C81–871.

D. Robert Cumming, Carey DeDeyne, Sutherland, Asbiell & Brennan, Atlanta, Ga., James Loftis, Bergson, Borkland, Margolis & Adler, Washington, D. C., for American Broadcasting Companies, Inc.

David Aufdenspring, Eugene S. Partain, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., David Boies, Cravath, Swaine & Moore, New York City, for CBS, Inc.

Matt Patton, Kilpatrick & Cody, Atlanta, Ga., William Hegarty, Cahill, Gordon & Reiniel, New York City, for National Broadcasting Co., Inc.

Robert Castellani, Nina Hunt, Asst. U.S. Attys., Atlanta, Ga., William G. Cole, Dept. of Justice, Washington, D. C., for Ronald W. Reagan, James A. Baker, III, Larry Speekes and Alexander M. Haig.

Eugene S. Partain, David R. Aufdenspring, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Cravath, Swaine & Moore, New York City, for plaintiff in No. C81–1329.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on the Motion to Dismiss of NABET, or Alternatively, to Transfer Venue or, Alternatively, for Summary Judgment. The primary grounds for this motion on the part of Defendant National Association of Broadcast Employees and Technicians AFL–CIO (NABET) are that (1) NABET is not subject to venue in this district and that the Court is "without jurisdiction" over NABET; (2) the Court is without jurisdiction to adjudicate claims concerning the invalidity of NABET's contracts with Defendants ABC and NBC because the National Labor Relations Board has exclusive jurisdiction over such claims; (3) Plaintiff fails to state a claim upon which relief may be granted against NABET. For the reasons given below, NABET's motion is DENIED in its entirety.

### I. *Venue*

NABET was joined as a party to this action pursuant to Fed.R.Civ.P. 20 on July 16, 1981. Fed.R.Civ.P. 82 provides that the federal rules shall not be construed "to extend or limit" the venue of actions in the federal district courts. NABET has made allusions in its arguments to the limited "jurisdiction" of the federal courts. *See* Brief of NABET in Support of Motions and in Response to Plaintiff's Trial Brief [hereinafter referred to as NABET Brief], at 5. Venue, however, is "primarily a matter of convenience of litigants and witnesses," *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967), while subject matter jurisdiction is a matter of the federal court's very power to adjudicate, as granted by the Congress and in the Constitution. *See generally*, Wright, C. & Miller, A., Cooper, E., Federal Practice and Procedure, § 3801 (1976 ed.).

 NABET does not appear to contend seriously, aside from its claim of NLRB pre-emption which is addressed *infra*, that this Court lacks subject matter jurisdiction of this action. The Court on its own motion, however, addresses this question and finds subject matter jurisdiction appropriate on three grounds. First, under the doctrine of pendent jurisdiction as enunciated in this Circuit, a federal court in a federal question case such as the instant one may assert jurisdiction over a new party, even if the claim against the new party does not involve a federal question. *See Connecticut General Life Insurance Co. v. Craton*, 405 F.2d 41, 48 (5th Cir. 1968). Second, the collateral issues involving NABET arise from the interpretation of collective bargaining agreements, a matter of judicially-created "federal law." *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Third, Plaintiff Cable News Network (CNN) has based assertions on 29 U.S.C. §§ 158(b)(4)(B) and (e). Whether these federal labor law issues are committed to the exclusive jurisdiction of the NLRB is addressed in Section II, *infra*.

Neither does NABET appear to contend seriously that this Court lacks *in personam* jurisdiction over it by virtue of Ga.Code § 24–113.1(a) and the cases which have construed that statute to extend as far as due process permits. *See, e.g., Brooks Shoe Manufacturing Inc. v. Byrd*, 144 Ga.App. 431, 241 S.E.2d 299 (1977). NABET does strongly argue that there is no adequate statutory basis for venue in this district. The Court believes, however, that 28 U.S.C. § 1391(c) provides such a basis.

 Section 1391(c) provides that a "corporation" may be sued in any judicial district in which is it "doing business." It is settled that a labor union is a "corporation" for purposes of the statute. *See Denver and Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 562, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954 (1967). Although there is some controversy on the question—one of federal law— whether "doing business" within the meaning of Section 1391(c) extends to the limits of due process, this Court believes that the better view is that it does. *See Patin v. Sioux City and New Orleans Barge Lines, Inc.*, 253 F.Supp. 984, 986 (W.D.La.1966);

Wright, C. & Miller, A., Cooper, E., *supra*, § 3811 at 65, and cases cited at n.45 (1976 ed.); 1 Moore's Federal Practice, ¶ 0.142, at 1411 (2d ed. 1981). Since NABET is properly subject to the *in personam* jurisdiction of this Court, a fact that will be more fully apparent in the discussion *infra*, it does not seem unfair that venue be laid here. This view accords with the generally expansive purpose of 28 U.S.C. § 1391(c). *See generally* Wright, C. & Miller, A., Cooper, E., *supra*, § 3811. Even if a higher threshold were required for federal venue, the Court is not persuaded that NABET's contacts with the forum are insufficient to meet that more rigorous standard.

NABET International has its principal place of business in Bethesda, Maryland. The International is governed by a convention made up of delegates from the various locals it has chartered. *See* Deposition of Edward M. Lynch, NABET International President, October 29, 1981 [hereinafter referred to as Lynch Deposition], at 20. At present, NABET has no locals in the state of Georgia. *Id.* at 29; Affidavit of Edward M. Lynch, September 3, 1981, accompanying NABET Brief. NABET does not appear to be a party to any existing contracts made in Georgia. Lynch Deposition, *supra*, at 29.

Local 15 of NABET, however, has filed a petition with the NLRB seeking certification to represent certain of Plaintiff CNN's Atlanta employees. *See* Exhibit A, attached to Plaintiff Cable News Network, Inc.'s Supplemental Brief in Response to NABET's Motion to Dismiss, or Alternatively, to Transfer Venue, or Alternatively, for Summary Judgment [hereinafter referred to as CNN's Supplemental brief]. Local 15's jurisdiction includes the entire United States east of the Mississippi. It represents freelance film workers or technicians who are NABET members. *See* Lynch Deposition, *supra*, at 32.

A negotiating committee made up of representatives from various locals having members who are network employees controls the negotiation of the ABC and NBC contracts which are at issue in this case. *Id.* at 22–23. The international president of NABET, as coordinator of this committee, negotiates on its behalf. *Id.* at 23. With the exception of the network and certain other special contracts, including, apparently, film contracts, the International has the authority to negotiate agreements for locals. *Id.* at 22. Although it is unclear to the Court that any contract negotiation resulting from a successful organizational effort on the part of Local 15 among CNN's Atlanta employees would be under the direct authority of the international president, it would at least be his "ultimate responsibility." *Id.* at 21–22.

Local 15's By-Laws indicate that membership in the Local requires accreditation of both the International and the Executive Board of the Local. *See* Local 15 By-Laws, § 2.1, Exhibit D, attached to CNN's Supplemental Brief. Local membership also entails financial obligations to the International. *Id.* at §§ 2.1, .6.

The locals act autonomously with regard to daily operations, subject to the limitations of the International constitution. Lynch Deposition, *supra*, at 26. The International has the power to put a local in trusteeship for violations of the International constitution and of other obligations. *Id.* For Local 15 to engage in organizational activities, approval of the International is required. *See* Local 15 By-Laws, *supra*, § 8.8(f).

Under these facts, particularly the International's place in approving organizational activity and accrediting new members, the financial resources it derives from such new membership, and its final say in negotiation of any contract for such members, the Court believes that Local 15's organizational efforts can fairly be imputed to the International which chartered it. *Cf. International Printing Pressmen and Assistants Union of North America v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 733–34 (1946) (International liable for Local's wrongful expulsion of member). Such conduct is relevant to whether venue in this district is proper. *Cf. Moran v. International Alliance of Theatrical Stage Employees*, 139 N.J.Eq. 561, 52 A.2d 531 (Ch.1947) (in suit for admission

into local, personal jurisdiction over International proper).

The contrary cases cited by NABET are not controlling. The question now is whether Local 15's organizational activities can fairly be imputed to NABET for the purpose of determining whether NABET has had meaningful contacts with this forum. Whether the Local's activities would be attributable to NABET for the purpose of charging an unlawful act such as conspiracy under the antitrust law, the question in *United Brotherhood of Carpenters v. United States*, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947) is a different matter. This same analysis applies to other cases on which NABET relies. *Buckeye Power, Inc. v. Utility Workers Union*, 607 F.2d 759 (6th Cir. 1979), involved the liability of an international union for the activities of a local under the secondary boycott provisions of the National Labor Relations Act, *United Steelworkers of America v. Lorain*, 616 F.2d 919 (6th Cir. 1980) *cert. denied,* 451 U.S. 983, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981), concerned the 29 U.S.C. § 106 requirement of "clear proof" needed to hold a union liable for damages caused by an illegal strike, *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979) involved an international's liability under 29 U.S.C. § 185 for an unauthorized strike in breach of a collective bargaining agreement. The activities of the International which would be relevant for the purpose of establishing liability under a given statute are not necessarily the same as those which would be significant in determining the propriety of venue in a given forum.

*Farnsworth & Chambers Co. v. Sheet Metal Workers Local 49*, 125 F.Supp. 830 (D.N.M.1954) is also distinguishable. The Court there found that the local and international were autonomous bodies for the purpose of service of process. It specifically referred to the fact that the local did its own contract negotiating. In the instant case, the International President has ultimate responsibility for contract negotiation. Nowhere did the court allude to the approval of organizational efforts or the accredita-

tion of new members by the international or to any financial obligations of new members to the international. NABET International approves the organizational efforts of Local 15, accredits its new members, and receives dues from them.

The facts in the instant case also show that NABET had a local in Atlanta for about 7 years, which was disbanded apparently about two years ago. Lynch Deposition, *supra*, at 31, 55. Under NABET's stated policy, if its current organizational efforts at CNN were successful, it would establish another. *Id.* at 31. Also, NABET filed suit about five years ago in Georgia against an employer. *Id.* at 60.

Although the evidence on this point is not entirely clear, NABET-represented employees of ABC and NBC have undoubtedly been involved in coverage of presidential trips to Georgia. *Id.* at 46–47. Such trips were frequent during the Carter administration. NABET members may well have been involved in a pool situation of the type at issue in the instant case on President Carter's flights from Washington, D. C. to Georgia. *Id.* at 47. President Reagan's July 30, 1981 trip to Atlanta apparently involved some sort of press pool coverage. Exhibit C, attached to CNN's Supplemental Brief. NABET's International President has specifically objected to CNN's inclusion in the White House pool, alleging that the pool "is in existence because it was negotiated by this Union and the IBEW in collective bargaining sessions with the networks (NBC, ABC, and CBS) and codified in their collective bargaining agreements." *See* Letter dated June 5, 1980, addressed to the President from Edward M. Lynch, International President, in CNN Lynch Deposition, Exhibit 12. NABET also initiated a grievance procedure in connection with CNN's admission into the White House pool. *See* CNN Lynch Deposition, Exhibits 4–6.

NABET represents an estimated total of 40 employees in the ABC and NBC news bureaus in Georgia. *See* Deposition of Edward Lynch Deposition, *supra*, at 42. Mr. Edward M. Lynch, International President

of NABET, testified that NABET's collective bargaining agreements with the networks affect their activities in the state of Georgia. *Id.* at 57. In addition, NABET members can be given special assignments in Georgia. *Id.* at 34, 45.

NABET also held an international convention, which takes place once every four years, in Atlanta in 1974. *Id.* at 20, 61. NABET newsletters are regularly sent to its members in Georgia. *Id.* at 61.

The above facts establish a fairly continuous course of representation and/or of organizing on the part of NABET in this forum. The Court is particularly impressed with the fact that NABET in the recent past has chartered a local in this district and sued in this state to enforce rights against an employer. Also significant is that NABET is now engaged in organization of Plaintiff CNN's own workers in Atlanta. There is some indication that NABET members have participated in "pool" arrangements on presidential trips in Georgia analogous to those at issue in this case. These facts, in addition to NABET's maintenance of existing membership in Georgia, and its contacts with these members via newsletter, are sufficient to establish that NABET has purposefully availed itself of the privilege of conducting activities in this forum. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). It appears "reasonable and just according to our traditional conception of fair play and substantial justice" for this Court to assert personal jurisdiction over NABET, *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

Moreover, the Court believes that these contacts go beyond those required to sustain *in personam* jurisdiction, under Ga. Code § 24–113.1(a) and the due process clause, were such enhanced contacts required by 28 U.S.C. § 1391(c). Though the Court does not agree that 28 U.S.C. § 1391(c) should be interpreted to create a threshold for venue in a federal court which steps up the requirements for *in personam* jurisdiction in state or federal statutes,

even if Section 1391(c) were so construed, the contacts as outlined above would meet its requirements. *Cf. Brooks Shoe Manufacturing, Inc. v. Byrd*, 144 Ga.App. 431, 241 S.E.2d 299 (1977) (participation by non-resident defendant corporation in three trade shows in Georgia sufficient to sustain suit by Georgia resident who solicited orders for defendant in Georgia); *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 260 N.Y.2d 625, 208 N.E.2d 439 (1965) (defendant "doing business" within meaning of New York statute where it maintained a small bank account and a one-and-a-half room office in New York City for three full-time and four part-time employees, who transmitted information concerning reservations and placed some advertising but had no authority to bind the corporation; alleged wrong occurred in France).

## II. *Exclusive Jurisdiction of the NLRB*

NABET objects to the subject matter jurisdiction of this Court on the ground that the NLRB has exclusive jurisdiction of the issues raised herein. The question of the validity of NABET's contracts with ABC and NBC under the National Labor Relations Act arises in the context of Plaintiff CNN's attempt to show entitlement to injunctive relief for alleged constitutional violations. CNN's claim is a counter to the assertion that injunctive relief would adversely affect the networks and their viewers because it would necessitate violation of valid collective bargaining agreements. CNN's counter-claim is that NABET's contracts with NBC and ABC and any attempted enforcement thereof are illegal under 29 U.S.C. § 158(b)(4)(B) and the NABET contracts themselves violate 29 U.S.C. § 158(e).

■■ The labor law questions are obviously collateral to the constitutional issues central to this case and are thus properly within the jurisdiction of this Court. *See Connell Construction Co., Inc. v. Plumbers & Steamfitters Local 100*, 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975); *Local 189, Meat Cutters Union v. Jewel Tea Co.*, 381 U.S. 676, 684–88, 85 S.Ct. 1596, 1599–01, 14 L.Ed.2d 640 (1965). "[T]he doc-

trine of primary jurisdiction is not a doctrine of futility; it does not require resort to 'an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency.' (citation omitted)." *Local 189, Meat Cutters v. Jewel Tea Co., Inc.*, 381 U.S. at 686, 85 S.Ct. at 1600.

Moreover, "courts are themselves not without experience," *id.*, in deciding issues of the type presented here. Suits for labor contract violations may be brought in district court under 29 U.S.C. § 185 even though the defendant's conduct was an unfair labor practice. *See Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Thus, the collateral labor contract issue presently before the Court is within the purview of an exception to the NLRB's exclusive jurisdiction which Congress has carved out for federal district courts. In addition, 29 U.S.C. § 187 provides that an action for damages for violation of 29 U.S.C. § 158(b)(4) may be brought in any district court with jurisdiction over the parties. In view of the fact that Congress has specifically excepted from NLRB jurisdiction damage actions alleging violations of Section 8(b)(4), it does not seem that the Court's resolution of this Section's impact on NABET agreements as a collateral issue will unduly disrupt the congressional scheme to commit determination of labor law questions to the special expertise of the NLRB. *Cf. Vaca v. Sipes*, 386 U.S. 171, 179–81, 87 S.Ct. 903, 910–12, 17 L.Ed.2d 842 (state court jurisdiction not ousted by arguable 29 U.S.C. § 158(b) violation).

The Court also notes that the three network defendants have raised the validity of their collective bargaining agreements as defenses to antitrust claims against them. This is precisely the context in which the Supreme Court has held such collateral labor law issues may properly be considered by the district court. *See Connell Construction Co., Inc. v. Plumbers and Steamfitters Local 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975).

### III. *Failure to State a Claim*

Defendant NABET also seeks dismissal on the ground that Plaintiff CNN has failed to state a claim upon which relief may be granted against it. At this early stage of the litigation, however, the Court is unable, given the Fed.R.Civ.P. 8(f) mandate for liberal construction of pleadings and the assertions in Plaintiff CNN's briefs, *see, e.g.*, Cable News Network Inc.'s Trial Brief and Supplemental Brief in Support of Its Amended Motion for Preliminary Injunctive relief, at 110–26, to find that no claim against Defendant NABET has been asserted. *See* Wright, C. & Miller, A., *supra*, at § 1286 (1969 ed.).

The Court further finds that there are disputed issues of material fact which would make summary judgment on these claims inappropriate. *See* Fed.R.Civ.P. 56(c).

### IV. *Transfer of Venue*

Having concluded that venue is proper and that this Court has subject matter jurisdiction, the Court now addresses NABET's request for change of venue pursuant to 28 U.S.C. § 1404(a). The Court finds that NABET has not demonstrated inconvenience to it in litigating in this forum, or that Plaintiff or the other Defendants will not be substantially inconvenienced by transfer. *See* Wright, C. & Miller, A., Cooper, E., *supra*, § 3849, at 259.

For the reasons above given, the Court hereby DENIES in its entirety the Motion to Dismiss of NABET or Alternatively to Transfer Venue, or, Alternatively, for Summary Judgment.