**JOHNSON CREATIVE ARTS, INC., Plaintiff,**

v.

**WOOL MASTERS, INC., et al., Defendants.**

**Civ. A. No. 82–2989–G.**

United States District Court, D. Massachusetts.

Nov. 10, 1983.

sets of facts.

John M. Kahn, Hill & Barlow, Boston, Mass., Robert M. Newbury, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for plaintiff.

Stuart T. Rossman, Gaston Snow-Ely and Bartlett, Boston, Mass., John J. Jones, Hightstown, N.J., for Wool Masters, Inc., Robert M. Keyes, Cesar H. Guerrero.

## MEMORANDUM AND ORDER ALLOWING DEFENDANTS' MOTIONS TO DISMISS

GARRITY, District Judge.

Johnson Creative Arts, Inc. ("Creative Arts") commenced this action against Wool Masters, Inc. ("Wool Masters"), its two shareholders and others, alleging trademark violations, unfair competition and breach of contract. Wool Masters and its two shareholders, defendants Keyes and Guerrero, have moved to dismiss the action pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure on the grounds of lack of personal jurisdiction and improper venue.[1]

### I. *Facts*

The facts relevant to the motion to dismiss are not in dispute. Plaintiff Creative Arts is a Delaware corporation with its principal place of business in West Townsend, Massachusetts. It manufactures, distributes and sells wool yarn. The yarn, distributed nationally under the names *Paternayan* and *Paterna*, comes in over 350 colors. These colors are designated by means of an arbitrary numerical code that appears in books and charts furnished by Creative Arts to its retail outlets. Customers use the code to identify the color or shade of yarn they desire.

Defendant Wool Masters is a New York corporation with its principal place of business in Pearl River, New York. It was

---

1. The two non-moving defendants, Threadneedle, Inc. and Marcia A. Young d/b/a Wool Gathering, are Massachusetts retailers. They do not challenge the jurisdiction of this court or venue in this district.

incorporated on January 28, 1982. All the planning for the incorporation took place in New York. Defendant Keyes is president, vice president, and treasurer. Defendant Guerrero is secretary. They are the sole shareholders. Both were formerly employed by Creative Arts in its Paternayan Bros. division, which is located in New York City. Keyes was employed as financial manager, Guerrero as production manager. Both individuals reside in New York.

Wool Masters engaged in mail solicitation of various retail stores in Massachusetts and elsewhere, advising prospective customers that:

> Wool Masters is comprised of former Paternayan Bros. managers in an effort to create the finest Persian yarn in the needlecraft market. . . .

> We are presently offering all the new and old colors that Paternayan carries and we will be making additions in the future to improve your color selection. We are not claiming to be as good as Paternayan or any other company— we're claiming to be *better*. . . .

> To order or obtain more information, please call Wool Masters at (914) 735–2230 or 2335, or use the enclosed order form. You can order by using either Paternayan's old or new product numbers but please state *clearly* which set of numbers you are using.

The gist of Creative Arts' complaint is that Wool Masters' instruction to use Creative Arts' special numerical code in ordering Wool Masters' yarn encouraged retailers to palm off Wool Masters' yarn as yarn manufactured by Creative Arts.

The mail solicitation was based primarily on yellow page listings for needlepoint shops in various cities throughout the country, including Boston, Cape Cod and Worcester. The letter itself was written by defendant Keyes in New York and was mailed by him from New York.

Following the mail solicitation, Wool Masters began receiving written and telephone orders from various retail outlets located in Massachusetts and 34 other states. Wool Masters processed these orders in New York. All its sales were shipped f.o.b. New York. As of October 1, 1982, when this action was brought, Wool Masters had sold $8,773 worth of yarn to retailers in Massachusetts. It appears that this amount represents approximately 6% of Wool Masters' total sales.[2]

Wool Masters is not registered to do business in Massachusetts. Nor does it maintain an office, a mailing address, a telephone listing, or any employees in the state.

## II. *Personal Jurisdiction*

■ For the court to have personal jurisdiction over the moving defendants, we must find both that (a) the Massachusetts long-arm statute authorizes personal jurisdiction in the circumstances of this case and (b) the exercise of such jurisdiction would comport with the due process requirement that the defendants have certain "minimum contacts" with Massachusetts. *Hahn v. Vermont Law School*, 1 Cir.1983, 698 F.2d 48, 50.

■ The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 1 Cir.1980, 619 F.2d 902, 904. Plaintiff asserts that personal jurisdiction exists under Mass.G.L. c. 223A, § 3, which provides in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

**2.** After an evidentiary hearing, a United States Magistrate determined that Massachusetts was the sixth largest state in terms of sales for Wool Masters, and that of those six states Massachusetts sales represent approximately one-seventh of the total. Wool Masters disputes those determinations, contending that the information on which they were based was incomplete. Since Creative Arts has not challenged any of Wool Masters' representations concerning sales figures, including the 6% figure noted in the text, the court accepts Wool Masters' representations as accurate.

(a) transacting any business in this commonwealth; ...[3]

The "transacting any business" provision of the Massachusetts long-arm statute has been construed broadly. *Hahn v. Vermont Law School, supra* at 50; *Nova Biomedical Corp. v. Moller*, 1 Cir.1980, 629 F.2d 190, 193–194. Jurisdiction has been exercised on a showing of solicitation of business by a defendant plus some additional increment of activity in the state. *Backman v. Schiff*, D.Mass.1979, 84 F.R.D. 132, 137, n. 6 (citing cases).

### A. Corporate Defendant

■ We first apply this standard to the corporate defendant, Wool Masters. In our view, Wool Masters' solicitation letter and its sales totalling approximately $8800 to Massachusetts retailers authorize jurisdiction over the corporation. Cases such as *Droukas v. Divers Training Academy*, 1978, 375 Mass. 149, 376 N.E.2d 548; and *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.*, 1972, 361 Mass. 441, 280 N.E.2d 423, in which jurisdiction was not exercised, are distinguishable on their facts. In those cases plaintiffs attempted to predicate jurisdiction on a single commercial transaction. Wool Masters activities in Massachusetts were not simply isolated occurrences, however; they were part of Wool Masters' efforts to serve the market for yarn in the state. *Cf. World-Wide Volkswagen v. Woodson*, 1980, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490; *Hahn v. Vermont Law School, supra* at 52. We also conclude that the exercise of such jurisdiction over Wool Masters would comport with the requirements of due process.

On the due process issue *Vencedor Mfg. Co. v. Gougler Industries*, 1 Cir.1977, 557 F.2d 886, is dispositive in plaintiff's favor.[4] In *Vencedor*, the court noted that the critical inquiry in personal jurisdiction cases is whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 557 F.2d at 890, *quoting Hanson v. Denckla*, 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283. The court went on to identify two acts that meet this test. The first is soliciting business in the forum state. In *Vencedor*, the defendant's decision to send catalogues to customers in another state was a "purposeful" step into that state on which jurisdiction could be based. The second act that meets the jurisdictional test is sending products into the forum state with some regularity. So long as the defendant's sales are part of a regular course of dealing, and are not isolated or exceptional events, the fact that sales in the forum state account for a small percentage of the defendant's total sales is irrelevant.[5] Under either analysis, jurisdiction over Wool Masters is clearly permitted by the Constitution. Its letter to retail outlets clearly was seeking business in Massachusetts. And its sales to Massachusetts retailers totaling approximately $8800 constitutes a

---

**3.** Plaintiff also predicates jurisdiction on Mass. G.L. c. 223A, § 3(d), which provides for jurisdiction over a person who causes tortious injury in the state. With respect to defendants Wool Masters and Keyes, we need not reach this issue since we have found jurisdiction is authorized over them by virtue of their transacting business in the state. *See post* at 1110–1112. With respect to defendant Guerrero, jurisdiction is not authorized under § 3(d) because there is no allegation that Guerrero personally engaged in any tortious conduct. *Cf. Escude Cruz v. Ortho Pharmaceutical Corp., supra* at 906–908 (no jurisdiction without causal connection between defendant's acts and claimed injury).

**4.** *Vencedor* concerned jurisdiction under the long-arm statute of Puerto Rico. That statute permits the exercise of jurisdiction to the full extent of constitutional authority. 557 F.2d at 889. *Vencedor*, therefore, amounts to a discussion of the outer limits of personal jurisdiction permitted by the Constitution.

**5.** *Vencedor* also disposes of Wool Masters' argument that because all its shipments were f.o.b. New York, it only transacted business in New York. The *Vencedor* court rejected the same argument, refusing to rely on the f.o.b. designation when analyzing jurisdiction in a mail order case. *Vencedor, supra* at 890–91.

continuous and systematic pattern of sales, not a series of isolated events.[6]

For these reasons, Wool Masters' motion to dismiss for lack of personal jurisdiction is denied.

### B. *Individual Defendants*

We turn now to the individual defendants, Keyes and Guerrero. The general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation. *Escude Cruz v. Ortho Pharmaceutical Corp., supra* at 906. There must be an independent basis for asserting long-arm jurisdiction. Plaintiff's conclusory allegation that the individual defendants own and control the corporate defendant is insufficient to show that they transacted business in Massachusetts. Plaintiff has made no showing that defendant Guerrero had any contacts with Massachusetts that would constitute "transacting business." Indeed, the affidavits of defendants Keyes and Guerrero state that defendant Guerrero was involved in neither the incorporation of Wool Masters nor the solicitation letter. The fact that Guerrero is the corporation's secretary and owns a substantial portion of the corporation's stock does not without more establish that he was transacting business in Massachusetts for jurisdictional purposes. Because the plaintiff has failed to meet its burden of proving the facts necessary to sustain personal jurisdiction over defendant Guerrero, the action against him must be dismissed.

It is undisputed, on the other hand, that Keyes planned the incorporation of Wool Masters, that he composed and mailed the solicitation letter, and that he even accepted telephone orders from Massachusetts retailers. This evidence is sufficient to establish an independent basis for long-arm jurisdiction over defendant Keyes.

The "fiduciary shield" doctrine affords Keyes no protection in this case. The doctrine holds that acts performed by a person in his capacity as a corporate fiduciary may not form the predicate for the exercise of jurisdiction over him in his individual capacity.[7] The justification for the doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer. *Marine Midland Bank, N.A. v. Miller*, 2 Cir.1981, 664 F.2d 899, 902. The doctrine is not a constitutional principle, but is rather a rule of construction based on judicial inference as to the intended scope of state long-arm statutes. *Id.* at 902, n. 3. We are aware of no Massachusetts or First Circuit case that has adopted the fiduciary shield doctrine as a limitation on the reach of the Massachusetts long-arm statute. More fundamentally, we note that the fiduciary shield doctrine is an equitable principle and as such is not applied mechanically. *Id.* at 901. Its application requires an analysis of the particular facts of the case, especially the nature of the corporation and the individual's relationship to it. In this case, Keyes owns fifty percent of the corporation. He alone

---

**6.** *Accutest Corp. v. Accu Test Systems, Inc.*, D.Mass.1982, 532 F.Supp. 416, on which defendants place great reliance, is distinguishable on its facts. The defendant in *Accutest* neither solicited business in Massachusetts nor sold its products here. (The "products" in *Accutest* were shares of stock in the defendant corporation.) The only "solicitation" in *Accutest* consisted of the availability of defendant's preliminary prospectus and the publication of defendant's "tombstone" advertisement in the New York Times. Advertising in a national publication such as the New York Times is hardly the same sort of purposeful step into Massachusetts as Wool Masters' solicitation letter mailed directly to Massachusetts retailers. Moreover, the defendant in *Accutest* specifically instructed its underwriters not to sell stock in Massachusetts.

**7.** Creative Arts' response to the invocation of the fiduciary shield doctrine is a citation to *Donsco, Inc. v. Casper Corp.*, 3 Cir.1978, 587 F.2d 602, 606, which sets forth the proposition that a corporate officer is individually liable for torts he personally commits while acting on behalf of the corporation. *Donsco* is inapplicable to this case, however. The issue here is not whether Keyes can be held personally liable for torts he allegedly committed while acting on the behalf of Wool Masters, but rather whether he can be subject to Massachusetts jurisdiction solely on the basis of those torts.

planned and effected its formation. In his capacity as president, vice-president and treasurer, Keyes has directed the activities of the corporation since its inception. Under the circumstances, there is nothing unfair about predicating jurisdiction over Keyes on his corporation-related activities in Massachusetts. For these reasons, defendant Keyes' motion to dismiss on jurisdictional grounds is denied.

### III. *Venue*

Having decided that the assertion of personal jurisdiction is authorized over defendants Wool Masters and Keyes, we now turn to whether venue is proper in the District of Massachusetts. For venue to lie in this district under 28 U.S.C. § 1391(b), the claim must have arisen here. In the alternative, the corporate defendant alone may be sued here if it is doing business in Massachusetts under 28 U.S.C. § 1391(c).

#### A. *§ 1391(b)*

■ The prevailing test for venue under the "claim arising" provision of § 1391(b) is whether a substantial portion of the acts giving rise to the plaintiff's claim occurred in this district. *Lamont v. Haig*, D.C.Cir. 1978, 590 F.2d 1124, 1134; *cf. Leroy v. Great Western United Corp.*, 1979, 443 U.S. 173, 185–86, 99 S.Ct. 2710, 2717–18, 61 L.Ed.2d 464.[8] In applying this test, the court also must consider the availability of witnesses, the accessibility of other relevant evidence and the convenience of the defendant. On occasion the test yields two or more appropriate districts for venue; but these are rare cases. More often a single district emerges as the locus of the claim.

■ Such is the case here. Wool Masters' principal place of business is in the Southern District of New York. Planning and preparation for the incorporation also took place in New York. The solicitation letter, which constitutes a significant component of plaintiff's claim was written and mailed from the Southern District of New York. It bore the New York address of Wool Masters' headquarters. We therefore conclude that venue would be proper in the Southern District of New York.[9]

■ We reject plaintiff's contention that venue is also proper in the District of Massachusetts. Wool Masters' sales in Massachusetts only constitute approximately 6% of its total sales. Nothing distinguishes Massachusetts from the thirty-four other states in which Wool Masters sells its products, except that it is the most convenient district for the plaintiff, a factor which is not relevant to the venue analysis. *Leroy, supra* 443 U.S. at 185, 99 S.Ct. at 2717.[10]

---

**8.** Prior to the *Leroy* case, most courts used the "weight of contacts" test first announced in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, E.D.Pa.1968, 291 F.Supp. 252, 260, to analyze venue issues under § 1391(b). The validity of that test, which has been criticized by commentators, 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3806, at 36 (1976), was placed in doubt when the Supreme Court failed to mention it in *Leroy*. Although we have not relied on it, we note that a "weight of contacts" analysis in this case would yield the same result as the analysis in the text, *viz.*, venue is proper in the Southern District of New York.

**9.** That venue would be proper in the Southern District of New York is not disputed by Creative Arts.

**10.** We do not place any weight on the individual defendants' former employment with Creative Arts. There is no evidence that any of the acts giving rise to plaintiff's claim occurred while Keyes and Guerrero were employed by plaintiff. Although Keyes and Guerrero may never have gone into the yarn business but for their employment with Creative Arts, that fact has no bearing on the venue issue because it is not a necessary element of plaintiff's unfair competition claim. It was not until Keyes and Guerrero left plaintiff's employ and started their own business that any acts could have occurred "giving rise to plaintiff's claim." *Lamont v. Haig, supra* at 1134. Plaintiff relies on a portion of Keyes' deposition testimony in which Keyes states that one of the criteria he used in determining to whom the solicitation letter should be sent was whether a retailer had been a good customer of Creative Arts, a fact he learned during his employment with Creative Arts. Accepting this statement as true, it simply is too thin a reed on which to base venue when all the other relevant circumstances point to the Southern District of New York as the proper district.

Nor do we place any weight on the fact that the two non-moving defendants are Massachu-

Plaintiff relies on *VRS, Inc. v. Volume Shoe Corp.*, N.D.Ga.1982, 218 USPQ 604, for the proposition that a claim for trademark infringement and unfair competition arises in the district where the offending retail sales occurred. We decline to follow this case for two reasons. First, we take a different view of *Leroy, supra,* and *Lamont, supra.* The D.C. Circuit made clear when it formulated the "claim arising" test for venue under § 1391(b) that the acts giving rise to plaintiff's claim (i.e., the "operative events") must be assessed along with their ramifications for efficient conduct of the suit. *Lamont, supra* at 1134–35. The Supreme Court considered both factors when it determined where venue should lie in *Leroy, supra* 443 U.S. at 185–86, 99 S.Ct. at 2717–18. The *VRS, Inc.* court seems to focus only on the operative events half of the test, however, turning to the litigative efficiency analysis only in connection with a motion to transfer under 28 U.S.C. § 1404(a). Second, we question the court's treatment of the operative events half of the test, which requires that a substantial portion of the acts giving rise to the plaintiff's claim occur in the district. The court held that an undetermined number of retail sales in the Northern District of Georgia satisfied the test, regardless of the number of sales that may have occurred in other judicial districts. This approach, in our opinion, reads the word "substantial" out of the test, and provides every plaintiff in similar trademark suits with "an unfettered choice among a host of different districts," contravening the Supreme Court's counsel in *Leroy.*

■ The correct approach to venue under the "claim arising" provision of § 1391(b), we believe, must both consider litigative efficiency and examine whether the acts which occurred in the district and gave rise to plaintiff's claim were substantial. For these reasons the claim against defendant Keyes is dismissed for improper venue.

### B. § 1391(c)

The corporate defendant, Wool Masters, may also be sued here if it is "doing business" in this district for the purposes of 28 U.S.C. § 1391(c).[11] Courts have disagreed on the meaning of "doing business." Some courts have found that "doing business" under § 1391(c) and "transacting any business" under the typical long-arm statute are identical concepts "such that the satisfaction of one provision ipso facto satisfies the other." Note, "Federal Venue Over Corporations Under Section 1391(c): Plaintiff Corporations, the Judicial District Limitation, and 'Doing Business'," 12 *Ga.L.R.* 296, 308 (1978); see *Houston Fearless Corp. v. Teter,* 10 Cir.1963, 318 F.2d 822, 825; *Cable News Network, Inc. v. American Broadcasting Companies, Inc.,* N.D. Ga.1981, 528 F.Supp. 365, 367; *Galonis v. National Broadcasting Co.,* D.N.H.1980, 498 F.Supp. 789, 791. This approach has the support of no less an authority than Professor Moore. 1 *Moore's Federal Practice,* ¶ 0.142, at 1411 (2d ed. 1981).

---

setts retailers. Plaintiff just as easily could have joined retailers from the other 34 states in which Wool Masters sold its yarn. Plaintiff's unfettered choice of defendants does not mean it has an unfettered choice of judicial districts. *Cf. Leroy, supra* at 186–187, 99 S.Ct. at 2717–2718.

**11.** Defendant Wool Masters argues that even if its own business activities here are sufficiently extensive to meet the venue requirements of 28 U.S.C. § 1391(c), venue for the entire action is still improper in this district because the venue requirements of 28 U.S.C. § 1391(b) have not been met with respect to the individual defendants. This same argument was rejected by the court in *Van Schaick v. Church of Scientology,*

D.Mass.1982, 535 F.Supp. 1125, 1134, n. 7, where we noted:

> [T]he defense of improper venue is personal to the party to whom it applies, and a resident defendant may not avail himself of a dismissal or transfer due to improper venue over a nonresident, unless the latter is an indispensable party (citations omitted).

Defendants' citation to *Pfeiffer v. International Academy of Biomagnetic Medicine,* W.D.Mo. 1981, 521 F.Supp. 1331, for the contrary proposition is inapposite because none of the defendants in that case were corporations. To the extent *Seabrook Foods, Inc. v. Seabrook Brothers & Sons, Inc.,* S.D.N.Y.1980, 495 F.Supp. 792, is inconsistent with this analysis, we decline to follow it.

We believe that the weight of authority supports the contrary position, however. *Wright v. Columbia University*, E.D.Pa.1981, 520 F.Supp. 789, 795; *First Pullen Commodity Services, Inc. v. A.G. Becker-Kipnis & Co.*, S.D.Fla.1981, 507 F.Supp. 770; *Lubrizol v. Neville Chemical Co.*, N.D.Ohio 1978, 463 F.Supp. 33, 36; *Sterling Television Presentations, Inc. v. Shintron Company, Inc.*, S.D.N.Y.1978, 454 F.Supp. 183, 190. As the court stated in *Time, Inc. v. Manning*, 5 Cir.1966, 366 F.2d 690, 696:

> Jurisdiction and venue, while comprising many of the same considerations, are not the same thing. Both are designed to test the fairness to the defendant and the degree of inconvenience caused him by requiring him to litigate in a particular court. But jurisdiction is relatively more concerned with fairness and venue more concerned with inconvenience.

Because jurisdiction and venue perform different functions in our judicial system, each calls for independent examination. Furthermore, many states contain several federal judicial districts. It would seem anomalous to allow a defendant's contacts with one corner of a state automatically to justify venue in all of the state's judicial districts. See Note, *supra* at 307. For these reasons, we hold that for a corporation to be "doing business" under § 1391(c), it must be engaged in activity beyond the minimum contacts required for the positing of in personam jurisdiction.

Unfortunately, most of the cases that have differentiated between "transacting business" for personal jurisdiction and "doing business" for federal venue have been unable to articulate a workable test for determining when a corporate defendant is "doing business" in a particular district. The "licensing test" formulated in *Remington Rand, Inc. v. Knapp-Monarch Co.*, E.D.Pa.1956, 139 F.Supp. 613, 617, has proven difficult to apply and has never been widely adopted.[12] *Smith v. Avco-Lycoming*, E.D.Pa.1980, 497 F.Supp. 622, 624; *see also* Note, *supra* at 318–321. Other verbal formulations provide little guidance. *Smith v. Avco-Lycoming*, *supra* at 625 ("sustained interest in seeing its products sold and serviced here"); *Sterling Television Presentation, Inc. v. Shintron Company, Inc.*, *supra* at 190 ("conducts business here continuously and systematically").

This issue does not lend itself to an analysis using neat labels and catch-phrases. It requires a fact-sensitive inquiry into the general character of the corporation, the nature and scope of its business operations, and the extent and continuity of authorized corporate conduct within the forum. *Accutest Corp. v. Accu Test Systems, Inc.*, *supra* at 422.

In light of these factors, we conclude that Wool Masters' solicitation efforts and its approximately $8800 in Massachusetts sales fall short of the amount of activity required for venue under § 1391(c). It is impossible to state precisely what volume or percentage of sales is required to sustain venue under § 1391(c) when solicitation and sales constitute a corporation's only contact with the selected forum. *Honda Associates, Inc. v. Nozawa Trading, Inc.*, S.D.N.Y.1974, 374 F.Supp. 886, represents one end of the spectrum: an out-of-state corporation's sales totalled $37, which was approximately 1/300 of 1 percent of all its sales. Venue was denied. *Agra Chemical Dist. Co. v. Marion Laboratories, Inc.*, W.D.N.Y.1981, 523 F.Supp. 699, was a closer case. Venue was deemed proper over a corporation whose New York sales accounted for only 6% of its total sales, but who had employees in New York soliciting business. The court based its venue ruling on the presence of those individuals.[13] On the other hand, the court

---

12. Perhaps the biggest problem with the "licensing test" is its ambiguous relationship to various state licensing laws. Note, *supra* at 321. Venue is a matter of federal law. *Cf. Leroy, supra* 443 U.S. at 183, n. 15, 99 S.Ct. at 2716, n. 15.

13. The venue ruling in *Agra* was based on the venue provisions of the antitrust laws, not § 1391(c). Since the requirements of § 1391(c) appear to be stricter than the antitrust venue provisions, 523 F.Supp. at 702, we cannot be

denied venue with respect to another corporation whose only contact with New York was sales totalling approximately $8800. The three cases on which plaintiff Creative Arts relies to support venue all involve corporate defendants with significantly greater contacts to their respective fora than Wool Masters' contacts with Massachusetts. *Minnesota Automotive, Inc. v. Stromberg Hydraulic Brake & Coupling Co.*, D.Minn.1970, 309 F.Supp. 614, 616 (evidence of "voluminous sales"); *Samson Cordage Works v. Wellington Puritan Mills, Inc.*, D.R.I.1969, 303 F.Supp. 155, 157 (sales in excess of $50,000 annually); *City of Philadelphia v. Morton Salt Co.*, E.D.Pa.1968, 289 F.Supp. 723 (approximately $75,000 in sales over 3 years). After thoroughly reviewing the case law, we conclude that, although this is a close case, the claim against Wool Masters must be dismissed due to improper venue.

#### IV. *Summary*

There is jurisdiction over the defendants Wool Masters and Keyes under Mass.G.L. c. 223A, § 3(a), and that jurisdiction is consistent with federal requirements of due process. There is no jurisdiction over the defendant Guerrero.

Venue in this district over the defendants is improper, however, as the cause of action did not arise in this district for the purposes of 28 U.S.C. § 1391(b) and as the corporate defendant is not doing business in this district for the purposes of 28 U.S.C. § 1391(c).

The action is dismissed against defendant Guerrero for lack of personal jurisdiction. It is also dismissed against defendants Wool Masters and Keyes for improper venue. The court has the authority to transfer this action even though there is no personal jurisdiction over defendant Guerrero and venue is improper as to defendants Keyes and Wool Masters. *Goldlawr, Inc. v. Heiman*, 1962, 369 U.S. 463,

82 S.Ct. 913, 8 L.Ed.2d 39. The dismissals therefore shall be without prejudice for thirty days to allow plaintiff to move for a transfer to the Southern District of New York.[14]

---

sure that the facts in *Agra* would support venue under § 1391(c).

**14.** The pendent breach of contract claim against the moving defendants is also dismissed. *United Mine Workers v. Gibbs*, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.