Janice LaVALLEE, Roderick
LaVallee Plaintiffs

v.

PARROT–ICE DRINK PRODUCTS OF
AMERICA, INC., Parrot–Ice Drink
Products of America, Ltd., Zaya Ma-
lik, Defendants.

No. CIV.A. 01–40042–NMG.

United States District Court,
D. Massachusetts.

Feb. 13, 2002.

Joanne D'Alcomo, Schneider, Reilly, Zabin & Costello, Boston, MA, for Janice Lavallee, Roderick Lavallee, Plaintiffs.

Jeffrey P. Allen, Katherine L. Young, Duane Morris, LLP, Boston, MA, for Parrot Ice Drink Products of America, Ltd, Parrot Ice Drink Products of America, Ltd, Parrot–Ice Drink Products of America, Inc., Parrot–Ice Drink Products of America, Inc., Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiffs Janice LaVallee ("LaVallee") and Roderick LaVallee (collectively "the LaVallees") assert claims against defendants Parrot–Ice Drink Products of America, Inc., Parrot–Ice Drink Products of America, Ltd. (collectively "Parrot–Ice") and Zaya Malik ("Malik") based upon alleged deceitful acts and business practices. In the complaint, the plaintiffs allege that Parrot–Ice and Malik are liable for fraud and violations of M.G.L. c. 93A, and that Parrot–Ice is liable for breach of contract, breach of fiduciary duty, quantum meruit, promissory estoppel and unjust enrichment.

Federal jurisdiction is based upon diversity. The plaintiffs are residents of Massachusetts, defendant Malik is a resident of Texas and the Parrot–Ice Corporations are incorporated and have their principal places of business in Texas.

Malik has filed, pursuant to Fed. R.Civ.P. 12(b)(2), a motion to dismiss LaVallee's claims based upon lack of personal jurisdiction. The LaVallees respond in opposition to that motion that this Court has personal jurisdiction over Malik pursuant to the Massachusetts long-arm statute, specifically M.G.L. c. 223A, § 3.

### I. *Legal Standard*

It is well-settled that the plaintiff bears the burden of proving the existence of personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir.1995). When assessing questions of personal jurisdiction, this Court employs the *prima facie* standard under which the Court considers, taking all the plaintiff's "properly supported proffers of evidence" and allegation as true, whether the plaintiffs have provided sufficient evidence to support this Court's exercise of jurisdiction. *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992). In making its *prima facie* showing, the plaintiff must present specific facts to support its claim. *Foster–Miller*, 46 F.3d at 145.

### II. *Factual Background*

For the purpose of this Memorandum and Order, the facts are assumed to be as alleged by the plaintiff.

Parrot–Ice sells and distributes fruit drink dispensers and frozen fruit concentrate beverage products. In 1998, LaVallee contacted Parrot–Ice in Texas after attending a trade show in Boston to discuss developing the Middle East market for Parrot–Ice. Malik, Senior Business Coordinator for International Business Development for Parrot–Ice, sent a form response letter along with informational material to LaVallee in Massachusetts.[1] LaVallee and Malik, on behalf of Parrot–Ice, thereafter had "extensive" telephone discussions from their respective locations in Texas and Massachusetts.

LaVallee alleges that those discussions culminated in Malik's confirmation by phone that Parrot–Ice was the LaVallees' business partner in the Middle East and that the LaVallees would be entitled to a share of Parrot–Ice's profits there. On June 30, 1998, Malik faxed to the LaVallees at their residence in Massachusetts a letter which purported to grant them non-exclusive rights in Saudi Arabia to cultivate a joint venture between a Saudi Arabian company and Parrot–Ice. In that fax transmission, Parrot–Ice stated that it lacked "an acceptable [joint venture] distributor" for its products in Saudi Arabia and that, consequently, it was willing to sign a confidentiality agreement with the LaVallees and any companies they identified as potential partners.

Encouraged by these representations, LaVallee worked primarily out of her home in Massachusetts to develop business relationships for Parrot–Ice in the Middle East. She also traveled to the Middle East in 1998 to lay the groundwork for the introduction of Parrot–Ice products there. LaVallee contends that the fruit of her efforts (and those of her husband) was an agreement whereby a Saudi Arabian company consented to participate in a pilot program for Parrot–Ice products. LaVallee asserts that after she and her husband had established a test market in Saudi Arabia, Malik became "elusive". Despite the apparent breakdown in communication, Parrot–Ice's prospects in the Middle East were strong, and it launched sales of its product in Saudi Arabia in 1999.

By phone and fax, Malik purportedly represented to LaVallee that she would receive a 5% commission on sales she facilitated in Saudi Arabia to the Saudi Arabian company. LaVallee, however, soon grew suspicious upon learning that Parrot–Ice planned to meet directly with executives from another company that she and her husband had contacted and courted pursuant to their agreement with Parrot–Ice. LaVallee contacted Malik and he allegedly assured LaVallee that her interests were protected.

In 2000, Roderick LaVallee was seriously injured in an automobile accident in the Middle East. At that time, Parrot–Ice faxed LaVallee and offered her a "finder's fee" of $8,000 for her work in cultivating the Middle East market. LaVallee alleges that she then discovered that she was "being squeezed out" of business in the Middle East by Parrot–Ice. LaVallee further contends that if it is determined that there was no contract between her and Parrot–Ice, Malik's representations to her were fraudulent and actionable in any event.

### III.  *Discussion*

#### A.  **Applicable Law**

██ Before subjecting a non-resident defendant to its jurisdiction, a federal court sitting in diversity must find sufficient contacts that, considered in the ag-

---

1. In a supporting affidavit, Malik asserts that he is neither an officer nor a manager of Parrot–Ice.

gregate, meet the requirements of the forum state's long-arm statute and the Fourteenth Amendment of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979); *Nowak v. Tak How Inv., Ltd.,* 94 F.3d 708, 712 (1st Cir.1996) (hereinafter "Nowak II").

### 1. The Massachusetts Long–Arm Statute

The Massachusetts long-arm statute provides, in relevant part, that a Massachusetts Court may exercise personal jurisdiction:

over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) causing tortious injury by an act or omission in this commonwealth

M.G.L. c. 223A, § 3(c).

In the effort to "effectuate. . . [the Commonwealth's] legitimate desire to protect its citizens," the statute is to be construed broadly. *See Noonan v. The Winston Company,* 135 F.3d 85, 92 (1st Cir.1998).

To support this Court's exercise of jurisdiction, the LaVallees allege that Malik, acting on behalf of Parrot–Ice, made numerous calls and sent several letters and faxes to their home in Massachusetts. During the course of those communications, the parties purportedly agreed to enter what loosely may be termed a joint venture. The LaVallees assert that Malik did not intend to honor their agreement and that the LaVallees detrimentally relied on Malik's misrepresentations.

### a. Malik's Connection with the Forum

■ Malik, for his part, contends that Section 3(c) is inapplicable because 1) the only tort claim against him is for fraud or deceit and 2) any relevant contacts were by telephone, fax or email to the plaintiffs, then residents of Saudi Arabia. As an initial matter, Malik's physical presence in the forum is not necessary to establish jurisdiction under the Massachusetts Long–Arm statute. *Haase v. James Galvin Electric Co. Inc.,* 1998 WL 22076, *4 (Mass.Super.1998). Moreover, although Malik may have believed that the plaintiffs' permanent place of residence was in Saudi Arabia, he nevertheless made numerous calls and faxes to LaVallee in Massachusetts, undermining the plausibility of his affirmative defense.

■ Malik's arguments are also unpersuasive because it is well established that fraudulent misrepresentation is a sufficient basis for jurisdiction under § 3(c). *Ealing Corp. v. Harrods Ltd.,* 790 F.2d 978 (1st Cir.1986). In addition, the plaintiffs state a cause of action under M.G.L. c. 93A, and the First Circuit Court of Appeals has "assume[d],without deciding, that a Chapter 93A violation would constitute a tortious injury under Chapter 223A." *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,* 132 F.3d 111, 114 (1st Cir. 1997).

### b. The Fiduciary Shield Doctrine

■ Malik argues that he should not be subjected to jurisdiction in the Commonwealth because his contacts with the forum were made in his capacity as Parrot–Ice's representative. It is well established that "jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 573 F.Supp. 1106, 1111 (D.Mass.1983). This Court must determine that there is an "independent basis" for jurisdiction pursuant to the Massachusetts long-arm statute. *Id.* Courts in Massachusetts have asserted jurisdiction over individual corporate officers in cases where such officers mailed solicitation letters, placed numerous telephone calls and personally visited

the forum on behalf of their employer. *Id.; Principal Life Ins. Co. v. Glick,* 1994 WL 878819, \*\*2–3 (Mass.1994).

■ Malik nevertheless relies on arguments often enumerated in support of the fiduciary shield doctrine, a judicially-created equitable principle. The doctrine generally precludes a court from exercising personal jurisdiction over a non-resident corporate agent for acts performed on behalf of his employer. *See, e.g., Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912–14 (7th Cir.1995), *cert denied* 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995); Charles Alan Wright and Arthur R. Miller, *4 Federal Practice and Procedure,* § 1069.4 (2002).

The jurisprudential boundaries which define a court's consideration of the corporate form for jurisdictional purposes are obscure. *Davis v. Metro Productions, Inc.,* 885 F.2d 515, 520 (9th Cir.1989). Under agency principles, the corporate form, for purposes of liability as well as jurisdiction, operates as a shield for employees acting solely to further the interests of the principal. *Rice,* 38 F.3d at 913. Courts have, however, disregarded the corporate form and the fiduciary shield doctrine in cases in which the defendant 1) was in the forum to serve personal interests, 2) was the alter-ego of the corporation or 3) had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president). *Id.* at 913–14; *Davis,* 885 F.2d at 520–21. *In re Vitamins Antitrust Litigation,* 120 F.Supp.2d 58, 70–71 (D.D.C.2000).

### (1) The Fiduciary Shield in the Supreme Court

■ While questions of personal jurisdiction generally implicate issues of constitutional dimension, the fiduciary shield doctrine is not a constitutional principle. 18 *Fletcher Cyclopedia of Private Corporations* § 8642 (perm. ed. rev.vol.1999).

Furthermore, the doctrine is not a rule of federal common law. Although the Supreme Court has not expressly considered the fiduciary shield doctrine, it has, in *dicta,* acknowledged that jurisdictional questions involving corporate employees are fact-specific and rejected a blanket rule that "employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court held that a California court could assert jurisdiction over a nonresident newspaper reporter and an editor who had written and edited, respectively, an allegedly libelous article about a California entertainer in the *National Enquirer. Id.* at 789, 104 S.Ct. 1482. The *Calder* Court concluded that, for jurisdictional purposes, employees are "not to be judged according to their employer's activities [but by whether they were] primary participants in the alleged wrongdoing" intentionally directed at the forum. *Id.* at 790, 104 S.Ct. 1482.

In broad outline, the Supreme Court has neither rejected the fiduciary shield doctrine nor adopted it. In the case of the reporter and the editor (who were subjected to jurisdiction), not only was their conduct intentionally and independently directed at the forum but also they derived a direct benefit from the publication of the article. Both parties received credit and, because of the attending scandal, publicity.

In contrast, many employees, including junior business associates, do not personally benefit from actions in a foreign forum. The *Calder* Court's fact-specific focus suggests that ideas of fundamental fairness operate as a background norm in most jurisdictional disputes regardless of wheth-

er equitable or constitutional principles are being applied. *Cf. In re Vitamins*, 120 F.Supp.2d at 71.

### (2) The Fiduciary Shield in Massachusetts

Numerous Massachusetts courts have noted that no state or federal court in Massachusetts has held that the fiduciary shield doctrine limits the reach of the Massachusetts Long–Arm statute. *Johnson Creative Arts*, 573 F.Supp. at 1111; *Principal Life*, at *3; *Shipley Co., Inc. v. Clark*, 728 F.Supp. 818, 821 (D.Mass.1990); *Yankee Group, Inc. v. Yamashita*, 678 F.Supp. 20, 22 (D.Mass.1988). Nevertheless, applying agency principles, this Court must consider whether Malik was more like a junior business associate or a "primary participant" in the alleged wrongdoing in determining whether he personally committed a tort in the Commonwealth pursuant to § 3(c).[2]

▬ Although this may a close call, the Court concludes that Malik did not act in the forum to serve his personal interests, but rather acted solely as an agent of Parrot–Ice. With respect to the corporate defendants, the plaintiffs have satisfied the requirements of section 3(c) because Malik, via mail and electronic means, made an allegedly fraudulent misrepresentation in the Commonwealth upon which the plaintiffs relied when they acted on Parrot–Ice's behalf in the Middle East. *See, e.g., Ealing*, 790 F.2d at 982. Furthermore, the plaintiffs' Chapter 93A claim stems from an alleged tortious injury in the Commonwealth for which Malik may bear some responsibility. That does not, however,

establish jurisdiction over Malik who, unlike the reporter and the editor in *Calder*, is alleged neither to have derived any personal benefit from his contacts in the Commonwealth nor to have acted beyond the scope of his employment.

### 2. The Due Process Analysis

▬ The Court, having found no jurisdiction over the individual defendant under the Massachusetts Long–Arm statute need go no further. However, the due process analysis is addressed for the sake of completeness.

In addition to satisfying the requirements of the Long–Arm statute, the plaintiff must also show sufficient minimum contacts such that "the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994).

▬ A court may exercise jurisdiction over the defendant by virtue of either general or specific jurisdiction. General jurisdiction exists when the litigation

> is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in a systematic activity, unrelated to the suit, in the forum state....

*United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992) ("Pleasant St. I"). In the absence of general jurisdiction, a court may exercise specific jurisdiction over a defendant if "there a demonstrable nexus between a plaintiff's claims and a defendants's forum based activities..." *Massachusetts School of Law*

---

**2.** This Court could, but need not, rely upon the fiduciary shield doctrine to illuminate that analysis: an employee acting solely at the behest of his employer is not a primary participant in the alleged wrongdoing, i.e., if a court exercises jurisdiction over the corporation, it gilds the lily to exercise jurisdiction over the employee when his activities in the forum, were not torts independently directed toward the forum. The fiduciary shield doctrine is not an absolute bar to personal jurisdiction over a corporate employee, *Resource Ventures, Inc. v. Resources Management Int'l, Inc.* 42 F.Supp.2d 423 (D.C.Del.1999), but it is relevant to a court's consideration of the propriety of exercising such jurisdiction.

*at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998).

■■■ In the personal jurisdiction context, a court's constitutional inquiry implicates three distinct components: relatedness, purposeful availment (sometimes called "minimum contacts") and reasonableness. *Id.* at 35.

### a. Relatedness

In analyzing relatedness, the court considers the nexus between the claim and the defendant's in-forum activities. *Pleasant St. I,* 960 F.2d at 1089. The relatedness requirement is met only if "the action... directly arise[s] out of the specific contacts between the defendant and the forum state." *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995). The First Circuit Court of Appeals customarily applies a proximate cause test in determining whether the relatedness inquiry is satisfied. *Nowak v. Tak How Inv., Ltd.,* 899 F.Supp. 25, 30 (D.Mass.1995). Nevertheless, in light of the flexible nature of the relatedness inquiry, the First Circuit has declined to require strict adherence to a proximate cause standard, instead applying a "small overlay of 'but for' on 'proximate cause' ". *Nowak II,* 94 F.3d at 715–16.

■■■ The transmission of information into Massachusetts by way of the mails, the internet or the telephone is decidedly a contact for purposes the relatedness analysis. *Sawtelle,* 70 F.3d at 1389–90. However, the plaintiff must also demonstrate that these communications caused the plaintiff's injury, constituting in-forum acts sufficient to establish specific personal jurisdiction in Massachusetts. *Id.* Certainly, LaVallee, from her Massachusetts home and later in Saudi Arabia, proceeded as an agent of Parrot–Ice in the Middle East based upon, at least in part, Malik's communications to her.

The crux of the LaVallees' claim, however, is that the defendants' extra-forum activities in exploiting the LaVallees' work in Middle East constituted a breach of contract, or in the alternative, fraudulent misrepresentation. Malik's communications transmitted into Massachusetts were ancillary to the allegedly offending non-forum activities of Parrot–Ice. The gravamen of the LaVallee's complaint is not Malik's alleged misrepresentations which were his only relevant contacts with the forum. Malik did not set foot in Massachusetts for any reason even tenuously related to the present cause of action. The plaintiffs' showing of relatedness is thus quite strained, resting upon a vulnerable causal link.

### b. Purposeful Availment

■■■ Certain core principles guide the analysis of purposeful availment. *Turpin v. Mori Seiki Co., Ltd.,* 56 F.Supp.2d 121, 126 (D.Mass.1999). The focal points of the purposeful availment inquiry, voluntariness and foreseeability, consider whether a defendant's contacts with the forum "represent a purposeful availment of conducting activities in [Massachusetts]". *Id.* (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The voluntariness prong ensures that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person". *Id.* (*citing World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The foreseeability prong requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (*citing World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 580).

■■■ In the case at bar, Malik's contacts with Massachusetts were primarily

letters, email and telephone communications with the LaVallees in the forum. The LaVallees initiated the contact with Malik and his initial correspondence with the plaintiffs were form letters of a kind sent to every party inquiring about Parrot–Ice. Even as the prospect of a business relationship between the LaVallees and Parrot–Ice grew, Malik neither visited Massachusetts nor stepped out of his role as Parrot–Ice's emissary. Malik, moreover, was not a party to the contract between Parrot–Ice and the LaVallees. *Pleasant Street I,* 960 F.2d at 1090.

After the parties' initial negotiations, it is not clear if Malik was aware of the full extent of Parrot–Ice's actions in the Middle East. The plaintiffs' evidence suggests that while Malik was their main contact, as an agent of Parrot–Ice he was neither completely responsible for the offending actions at issue nor fully cognizant of the growing gap between the plaintiffs' expectations and that company's actions. Malik's role in the instant dispute did not afford him notice that he might individually be haled into court in Massachusetts to answer for the actions of his employer. *Massachusetts School of Law,* 142 F.3d at 36–37.

### c. Reasonableness

The Supreme Court has enumerated five "gestalt factors" that bear upon the reasonableness prong: (i) the defendant's burden of appearing, (ii) the forum state's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv) the judicial system's interest in obtaining the most effective resolution of the controversy, and (v) the common interests of all sovereigns in promoting substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Pleasant St. I,* 960 F.2d at 1088 (*citing Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174).

### (1) The Defendant's Burden of Appearance

■■■ Malik certainly would be inconvenienced by being subject to this Court's jurisdiction because he may lack the financial resources or time to defend himself in Massachusetts. To satisfy the requirements of this particular gestalt factor, however, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Nowak II,* 94 F.3d at 718. (*quoting Pritzker,* 42 F.3d at 64). In the case at bar, Malik has not asserted any special or unusual circumstance.

### (2) The Forum State's Adjudicatory Interest

The events leading up to the dispute occurred in Massachusetts as well as in Texas and the Middle East. Although Massachusetts has an interest in the present litigation, it is not the paradigm tort case: the plaintiff's injury was not caused by a dangerous or defective good produced by an out-of-state manufacturer. *Nowak II,* 94 F.3d at 718. Consequently, the policy concerns that animate the Commonwealth's interest in providing a forum for its residents are not compelling here. This factor is a wash.

### (3) The Plaintiff's Convenience, The Administration of Justice and Pertinent Policy Arguments

The analysis of the final three gestalt factors implicates fairness and efficiency principles. As an initial matter, this Court must accord deference to the plaintiffs' choice of forum. *Nowak II,* 94 F.3d at 718. The plaintiffs' decision to bring suit in Massachusetts was not without merit: the LaVallees reside in the forum and many of the communications that form the basis of the suit occurred there. Similarly, the LaVallees are also suing Parrot–Ice

and the resolution of the case in a single forum will promote judicial economy.

On the other hand, it is likewise true that the burden on Malik in defending himself in Massachusetts may be quite substantial. Judicial economy need not swallow pragmatic concerns. Malik's role as Parrot–Ice's agent was not the kind of voluntary, independent action that would place Malik on notice that he might have to defend himself in the forum. Thus, these factors neither persuasively argue for or against the assertion of personal jurisdiction.

## IV. *Conclusion*

Malik neither acted beyond the scope of his employment nor secured any personal benefits in the forum, placing him beyond the reach of Massachusetts Long–Arm statute. Similarly, the plaintiffs have not demonstrated that the individual defendant, Malik (as opposed to the corporate defendants), had "minimum contacts" in Massachusetts. Although a defendant need not physically enter the forum to satisfy the minimum contacts test, the Supreme Court has made plain that "defendant's purposeful actions must create a substantial connection with the forum." *Buckeye Associates, Ltd. v. Fila Sports, Inc.,* 616 F.Supp. 1484, 1495 (D.Mass.1985)(quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174). The record before this Court does not support a finding that Malik has an adequate connection with the Commonwealth to support the exercise of jurisdiction over him in the forum either under the Long–Arm statute or the Constitution. Accordingly, Malik's motion to dismiss will be allowed.

## ORDER

For the reasons stated in the Memorandum above, this Court lacks personal jurisdiction over Zaya Malik. His Motion to Dismiss (Docket No. 2) is, therefore, **ALLOWED**.

**So ordered.**