**INTERFACE GROUP–
MASSACHUSETTS,
LLC, Plaintiff**

v.

**Fredric D. ROSEN, Defendant.**

**No. CIV.A. 02–12233–EFH.**

United States District Court,
D. Massachusetts.

April 7, 2003.

---

Franklin H. Levy, Dwyer & Collora, LLP, Boston, for Interface Group Massachusetts, LLC, Plaintiff.

Stephen D. Poss, James W. McGarry, Jeffrey A. Simes, Goodwin Procter, LLP, Boston, for Frederic D. Rosen, Defendant.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

This is an action for tortious interference with a subtenancy contract. Plaintiff Interface Group–Massachusetts, LLC ("Interface") alleges that Defendant Fredric D. Rosen, who is Chairman and CEO of Key3Media Group, Inc. and Key3Media Events, Inc. (collectively "Key3"), "caused Key3 to breach its subtenancy" with Interface. (Complaint at ¶ 8). Before the Court at this time is the defendant's Motion to Dismiss for Lack of Personal Jurisdiction.[1]

---

1. Interface does not argue that Defendant Rosen can be brought before a Massachusetts court on a *general* jurisdiction theory. This Court proceeds upon the premise that person-

When confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of persuading the court that jurisdiction exists. *E.g. Callahan v. Harvest Board Int'l, Inc.*, 138 F.Supp.2d 147, 157 (D.Mass.2001). The existence of specific personal jurisdiction over the non-resident defendant in this case depends upon the plaintiff's ability to establish that there are sufficient contacts between the defendant and the forum to satisfy both (1) the Massachusetts long-arm statute (Mass.Gen.L. ch. 223A, § 3), and (2) the Fourteenth Amendment's Due Process clause. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir.1995). In this case, defendant does not dispute that personal jurisdiction may be appropriate pursuant to the Massachusetts long-arm statute. This decision will therefore address the constitutional issue only.

▌ It is well established that jurisdiction over a corporate officer may not be based on jurisdiction over the corporation itself. *LaVallee v. Parrot–Ice Drink Prods. of Am.*, 193 F.Supp.2d 296, 300 (D.Mass.2002). This Court, therefore, must determine whether there is an *independent basis* for personal jurisdiction over Defendant Rosen as an individual.[2] *Id.; accord Yankee Group, Inc. v. Yamashita*, 678 F.Supp. 20, 22 (D.Mass.1988) ("to establish jurisdiction over a nonresident corporate officer, there must be an independent basis for requiring the officer to defend in a foreign court."). This re-

quirement for an independent jurisdictional basis may be satisfied when a corporate officer transacts in-forum business *either* in his personal capacity *or* solely on behalf of the corporation. *Yankee Group, Inc.*, 678 F.Supp. at 22–23 (explaining that Massachusetts courts have never recognized the "fiduciary shield doctrine" as a limitation on the reach of the long-arm statute; and finding that for purposes of personal jurisdiction, an individual defendant's *corporate* contacts with Massachusetts, even in absence of any *personal* contacts, are sufficient to satisfy both the long-arm statute and the Constitution.); *see also LaVallee*, 193 F.Supp.2d at 300–304 (demonstrating propriety of considering *only* the defendant's *corporate* contacts with the forum for purposes of determining personal jurisdiction).

In that the Court has decided to conduct this personal jurisdiction analysis under the "prima facie" standard, the law of the First Circuit mandates that the Court accept as true all properly supported proffers of evidence by the plaintiff. *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992). Such evidence shall be construed in a light most favorable to the plaintiff's jurisdictional claim. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998). Although under the prima facie approach the Court is not acting as a fact finder, the plaintiff may succeed only by going beyond the pleadings and providing affirmative proof to support its allegations. *Boit*, 967 F.2d

---

al jurisdiction over Defendant Rosen must therefore depend on the existence of *specific* personal jurisdiction. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998).

**2.** Key3Media Events, Inc. is the party defendant in a Massachusetts Superior Court action brought by Interface for breach of contract (Civil Action No. 01–01755). Even assuming that personal jurisdiction over Key3 is proper in that court, or in any other court in Massachusetts, such fact is not relevant to this Court's separate and distinct determination of personal jurisdiction over Defendant Rosen individually.

at 675; *see also Foster–Miller, Inc.,* 46 F.3d at 145 ("the plaintiff ... is obliged to adduce evidence of specific facts."). The ultimate inquiry is "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit,* 967 F.2d at 675.

## A. Defendant's Contacts with the Forum

Defendant Rosen is an individual who resides in Beverly Hills, California. (Declaration of Rosen at ¶ 2). The plaintiff's evidence of Rosen's contacts with Massachusetts is as follows. First, Rosen has traveled to Massachusetts for business purposes roughly half a dozen times. (Rosen deposition at 14). While present in Massachusetts, Rosen visited the property which Key3 was leasing from Interface at 300 First Avenue in Needham, observed the physical condition of the property, and spoke with various Key3 employees about the working conditions at the premises. (*Id.* at 14–16). Second, Rosen placed numerous telephone calls to the home and office of Paul Roberts, General Counsel to Interface. (Roberts affidavit at ¶ 3). Roberts' home and office are both located in Massachusetts. (*Id.*). When Roberts was unavailable Rosen often left messages on Roberts' answering machine and Roberts called him back. (*Id.*). During his messages and conversations with Roberts, Rosen spoke "abusively" and "derisively" about Mr. Sheldon Adelson, the Chairman of Interface. (*Id.* at ¶ 8). Rosen also indicated a desire to damage Adelson's reputation and to injure Adelson financially. (*Id.* at ¶ 9).

This is the extent of the facts for which Interface has provided evidence beyond the mere allegations in its pleadings. Interface has failed to provide evidence that Defendant Rosen has any other contacts with Massachusetts.

## B. The Constitutional Inquiry

The Fourteenth Amendment's concern for fundamental fairness is secured by the cardinal requirement that certain "minimum contacts" exist between the defendant and the forum state before personal jurisdiction may be exercised over that defendant. *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995). The First Circuit implements a three-part analysis to determine if sufficient contacts exist to constitutionally exert specific personal jurisdiction. *First,* an inquiring court must determine whether the claim underlying the litigation directly relates to or arises out of the defendant's contacts with the forum. *Second,* the defendant's in-state contacts must constitute purposeful availment of the benefits and protections afforded by the forum's laws, thus making the defendant's involuntary presence before the state's courts foreseeable. *Third,* if the plaintiff's case clears the first two hurdles, a court must analyze the overall reasonableness of exercising jurisdiction in light of a number of factors (the Gestalt factors) that touch upon the fundamental fairness of subjecting the defendant to the jurisdiction of the court. *See Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999); *see also Foster–Miller, Inc.,* 46 F.3d at144. These three distinct components to the constitutional inquiry for personal jurisdiction are commonly referred to as the "relatedness," "purposeful availment" (sometimes called "minimum contacts"), and "reasonableness" tests, respectively. *E.g. Foster–Miller, Inc.,* 46 F.3d at 144. An affirmative finding on each of the three elements is necessary to support specific personal jurisdiction. *Phillips Exeter Acad.,* 196 F.3d at 288.

### 1. *Relatedness*

The relatedness requirement focuses on the nexus between the defendant's contacts with the forum and the plaintiff's cause of action. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 714 (1st Cir.1996). In this case, then, the Court must consider Defendant Rosen's contacts with Massachusetts viewed through the prism of the plaintiff's tortious interference claim. *See Sawtelle*, 70 F.3d at 1389.

The relatedness inquiry ensures that the element of *causation* remains in the forefront of the due process investigation. *Ticketmaster—New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir.1994). With regard to causation, the Court of Appeals for the First Circuit customarily applies a proximate cause test to determine whether the relatedness prong is satisfied. *LaVallee*, 193 F.Supp.2d at 303. In light of the flexible nature of the relatedness inquiry, however, the First Circuit does not dictate strict adherence to a proximate cause standard and instead sanctions a "small overlay of 'but for' on 'proximate cause.'" *Id.* (quoting *Nowak*, 94 F.3d at 715–716). More specifically, when evaluating the in-forum contacts related to *tort-based* claims,[3] the First Circuit customarily looks to whether the plaintiff has established *both cause in fact*[4] (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) *and legal cause*[5] (i.e., the defendant's in-state conduct gave birth to the cause of action). *Mass. Sch. of Law*, 142 F.3d at 35 (citing *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d

1080, 1089 (1st Cir.1992)); *see also Callahan v. Harvest Board Int'l, Inc.*, 138 F.Supp.2d 147, 164 (D.Mass.2001). The law's focus on causation for purposes of determining "relatedness" is thus evident. In this case, however, the causal nexus between Rosen's in-forum contacts and the plaintiff's tortious interference claim is clearly lacking.

■ This Court cannot say that Defendant Rosen *caused* Interface's injuries, and thereby subject him to its jurisdiction, merely because Rosen is Chairman and CEO of a corporation which is alleged to have breached its contractual relationship with the plaintiff. *See Sawtelle*, 70 F.3d at 1389 ("The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the *specific* contacts between the defendant and the forum state.") (emphasis added). The Court may consider only those *specific* contacts between Rosen and Massachusetts for which Interface has produced some evidence to support the existence thereof. *See Boit* 967 F.2d at 675 (when considering personal jurisdiction under the prima facie standard "[t]he plaintiff must go beyond the pleadings and make affirmative proof.") (internal quotations and citations omitted). In this case, the only such evidence proffered by the plaintiff relates to (1) approximately half-a-dozen business trips that Rosen made to Massachusetts, and (2) a number of telephone calls and messages which Rosen made to Paul Roberts' Massachusetts home and office and

---

**3.** The First Circuit recognizes that questions of specific jurisdiction are always tied to the particular claims asserted. To that end, the Court of Appeals acknowledges the propriety of analyzing contract claims and tort claims differently. *See e.g. Phillips Exeter Acad.*, 196 F.3d at 289; *Mass. Sch. of Law*, 142 F.3d at 35; *United Elec., Radio and Mach. Workers of*

*Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992).

**4.** Also referred to as "but-for cause." *Black's Law Dictionary* 212 (7th ed.1999).

**5.** Also referred to as "proximate cause." *Black's Law Dictionary* 213 (7th ed.1999).

which were unrelated to the subtenancy contract now at issue. (*See* Part A. of this decision: "Defendant's Contacts with the Forum;" Declaration of Rosen at ¶¶ 11, 12; Affidavit of Roberts at ¶ 5). None of the Massachusetts contacts that the plaintiff has shown Defendant Rosen to have had can be said to have *caused* the plaintiff's injuries.

The gravamen of the harm that has befallen the plaintiff is Key3's decision to move out of the Needham, Massachusetts offices that it subleased from Interface. *But for this decision,* Interface could claim no injury as its subtenancy contract would not have been terminated early and the ground upon which its tortious interference claim is based would not exist. That being said, this Court is *not* able to make a "but-for" connection between (1) Defendant Rosen's specific Massachusetts contacts and (2) the injuries suffered by Plaintiff Interface. There is simply too tenuous a nexus between the two for this Court to conclude that Interface's injuries would not have occurred *but for* Defendant Rosen's business trips to Massachusetts or *but for* his specific telephone contacts with Paul Roberts. *See Mass. Sch. of Law,* 142 F.3d at 35.

In addition to the absence of "but-for" causation in this case, it also cannot be said that Defendant Rosen's Massachusetts contacts were the "legal" (or "proximate") cause of Interface's tortious interference cause of action. The First Circuit rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's in-forum contacts seems *attenuated* and *indirect. United Elec., Radio and Mach. Workers,* 960 F.2d at 1089. The case at hand is just such a case. It is the judgment of this Court that based on the plaintiff's evidence regarding the defendant's Massachusetts contacts, it cannot be said

that Rosen's in-state conduct gave birth to Interface's tortious interference cause of action. *See Mass. Sch. of Law,* 142 F.3d at 35. A person in Defendant Rosen's position could not have reasonably foreseen that his Massachusetts contacts (i.e., his business trips and telephone contacts with Paul Roberts) would give birth to the harm suffered by the plaintiff, namely, the financial losses resulting from Key3's terminating its contractual relationship with Interface.

The main thrust of the plaintiff's cause of action is *not* Rosen's Massachusetts business trips or telephone contacts, but rather the very act (or acts) of *"interference"* that the plaintiff claims Rosen committed. Specifically, Interface alleges that Rosen interfered with the contract when he "caused Key3 to breach its subtenancy" by "acting in Massachusetts" and "directing the actions of others in Massachusetts." (Complaint at ¶ 8). However, it would be utterly illogical to say that Rosen's Massachusetts business trips and telephone contacts constituted such alleged interference. If Rosen did indeed "interfere" with the subtenancy contract between Key3 and Interface, the evidence produced by the plaintiff is insufficient to show that he did so either by acting in Massachusetts or by means of any of his specific individual contacts with the Commonwealth. Rather, the evidence indicates that any actions Rosen may have taken concerning Key3's decision to leave the offices at 300 First Avenue in Needham, Massachusetts, took place either in California or New York and *not* in Massachusetts or by means of his Massachusetts business trips or telephone contacts (*see* Declaration of Rosen at ¶¶ 6, 9). According to the evidence presented, then, the harm suffered by Interface appears merely to be the in-forum *effect* of defendant's extra-forum activities. Such in-forum effects of extra-forum activities are not suffi-

cient to satisfy the constitutional requirement of minimum contacts. *See Mass. Sch. of Law,* 142 F.3d at 36 ("[w]e have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative.").

## C. Conclusion

The Court rules that Plaintiff Interface has failed to proffer evidence sufficient to support findings of all facts essential to personal jurisdiction. Specifically, the plaintiff has not shown that the tortious interference claim underlying this litigation directly relates to or arises out of Defendant Rosen's contacts with Massachusetts. As such, the "relatedness" prong of the tripartite test for minimum contacts has not been satisfied and it is therefore not necessary to consider the second and third prongs. *See e.g. Phillips Exeter Academy,* 196 F.3d at 288; *Pearl Investments, LLC v. Standard I/O, Inc.,* 224 F.Supp.2d 277, 283 (D.Me.2002). For the reasons presented above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby granted.

SO ORDERED.