JUDY E. MORRIS vs. UNUM LIFE INSURANCE COMPANY OF AMERICA & others.[1]

No. 04-P-1182.

Hampden. September 8, 2005. - July 14, 2006.

Present: PERRETTA, BERRY, & COHEN, JJ.

*Insurance,* Disability insurance. *Jurisdiction,* Personal, Long-arm statute, Nonresident. *Due Process of Law,* Jurisdiction over nonresident.

Isolated in-forum contacts by individual defendants were not sufficiently substantial or continuous to confer personal jurisdiction over the defendants in Massachusetts under the long-arm statute, G. L. c. 223A, § 3. [719-722]
This court declined to consider arguments that were not adequately presented on appeal. [722-725]

CIVIL ACTION commenced in the Superior Court Department on September 9, 1999.

A motion to dismiss was heard by *Thomas J. Curley, Jr.,* J.; motions for summary judgment were heard by *Lawrence B. Wernick,* J., and *Bertha D. Josephson,* J.; and entry of final judgment was ordered by *Constance M. Sweeney,* J.

*Jeffrey B. Rubin* for the plaintiff.

*Katherine A. Robertson* for Unum Life Insurance Company of America & others.

*Thomas H. Hayman* for Betty Rae Poppo.

PERRETTA, J. After UNUM Insurance Company of America (UNUM) denied her claim for disability benefits under her individual long-term disability insurance policy (policy), Judy E. Morris, an emergency department physician, brought the present action against UNUM as well as against two doctors, Peter Mirkin and Jane Pringle, employed by UNUM and against the insurance broker, Betty Rae Poppo, through whom she

[1] Peter Mirkin, Jane Pringle, and Betty Rae Poppo.

purchased the policy. In her complaint, Morris alleged that UNUM wrongfully denied her benefits, that Mirkin and Pringle intentionally misrepresented statements made by Morris's health care providers and intentionally mischaracterized the nature of her disabling condition for the purpose of denying her benefits, and that Poppo violated her legal obligations to procure a disability policy from a reputable insurer and to intercede with UNUM on her behalf after the denial of her claim. Morris's claims against Mirkin and Pringle were dismissed for lack of personal jurisdiction, and Poppo and UNUM were granted summary judgment. We affirm the judgment.

1. *Background.* We summarize the unchallenged and, hence, undisputed background facts as set out in the memoranda of decision issued by each of three judges in allowing Mirkin and Pringle's motion to dismiss and UNUM's and Poppo's motions for summary judgment. In July, 1990, while employed as a hospital emergency room physician, Morris purchased the policy in question.[2] The policy came with a rider that provided, in pertinent part:

> "[N]o benefit of any kind or amount is payable to anyone for any loss, impairment, or disability due to, or contributed to by, or resulting from . . . psychosis, psychoneurosis, anxiety, depression or any adjustment, emotional or personality disorder."

At the time of her purchase of this policy, Morris had a history of reactive depressive episodes and had been treated for depression.

On October 10, 1996, Morris had an employment physical examination done by her primary care physician, Patricia McIlvaine. McIlvaine noted that Morris was experiencing daily headaches, feelings of depression, and burn-out but that she nonetheless "look[ed] good." She did not recommend that Morris either restrict or limit her employment activities. Later that month, Morris took leave from her employment. She was

---

[2]Morris was also insured under a group long-term disability policy through her employer. See *Morris* v. *UNUM Life Ins. Co. of America*, 430 F.3d 500 (1st Cir. 2005), holding that Morris was entitled under her group policy to two years of benefits for mental disability but not to benefits for a physical disability.

experiencing significant work-related stress and was having difficulty in keeping up with the heavy workload required of her as an emergency room physician. Her requests for additional staffing support were denied. At this time, Morris was considering leaving her employment when her contract expired in July, 1997.

On or about October 30, 1996, Morris was served with process in a medical malpractice action. She became severely depressed and suicidal. She traveled to her father's home in Florida where she remained for about two weeks. While there, she was treated by a psychiatrist and a clinical psychologist. The psychiatrist diagnosed Morris as suffering from depression and as having an adjustment reaction with depressed mood, precipitated by work-related stress and the receipt of notice of the lawsuit against her. The clinical psychologist's diagnosis was that Morris was suffering from depression with suicidal ideation.[3]

Morris again saw McIlvaine on December 11, 1996. Although McIlvaine made no definitive diagnosis at that time, she was considering the possibility that Morris was suffering from chronic fatigue syndrome.[4] Sometime that month, Morris asked Poppo whether her policy with UNUM covered disabilities caused by chronic fatigue syndrome. Poppo advised Morris that it did.[5]

Asserting that she was disabled by chronic fatigue syndrome, Morris filed a claim for benefits under the policy the following month, January, 1997. In support of her claim, Morris submitted an "Attending Physician's Statement" completed by McIlvaine in which she listed chronic fatigue syndrome as her primary

---

[3]In his deposition, the Florida psychiatrist described an "adjustment reaction" as an emotional reaction to a specific stressor or set of stressors lasting no longer than six months after the stimuli producing the reaction is eliminated. Morris continued with the psychologist in psychotherapy until May, 1997, sometimes by telephone and sometimes in person.

[4]There is suggestion in the record that McIlvaine had considered a diagnosis of chronic fatigue or chronic fatigue syndrome in 1995.

[5]In her deposition, Morris testified that she did not ask Poppo about policy coverage for chronic fatigue syndrome. Rather, because she was experiencing a concurrent period of depression, she asked Poppo whether UNUM would deny her claim of disability due to the syndrome. According to Morris, Poppo told her that "there shouldn't be any problem."

diagnosis and identified "depression [secondary] to fatigue" as contributing to Morris's disability.

Pringle, an internist, and Mirkin, a psychiatrist, participated in the evaluation of Morris's claim. Both Pringle and Mirkin resided in Maine; worked in UNUM's Portland, Maine office; and held the position of "Second Vice President, Medical Director," of UNUM. They reviewed her claim file, which included medical records submitted in support of the claim, and conducted telephone interviews with her Florida mental health care providers. Pringle also conducted a telephone interview with McIlvaine, who was in Massachusetts, and also exchanged correspondence with her.

Based on its determination that Morris's disability was "psychiatric in nature" and, therefore, excluded from coverage under the terms of the rider to the policy, UNUM denied her claim for disability benefits on April 11, 1997. After the claim was denied, Poppo wrote a letter to Morris expressing her regrets for the difficulties Morris had experienced in her dealings with UNUM and inviting Morris to call upon her if there was anything that she could do to help her. At Morris's request, Poppo sought to discuss the matter with UNUM, but it refused to do so. Poppo apparently refused Morris's further request that she write to and persuade UNUM to cover her claim.

2. *The claims against Mirkin and Pringle.* Morris's claims against Mirkin and Pringle are based on the theory that they participated in a scheme to deprive her of her disability benefits. More particularly, it appears to be her position that they intentionally misrepresented statements made by Morris's health care providers and intentionally mischaracterized the nature of her disabling condition for the purpose of bringing it within the exclusion of the rider to her policy. She also complained that Mirkin and Pringle engaged in medical malpractice by undertaking "to disrupt [her] relationship with her treating physicians by telling them false, untrue and defamatory things about her in telephone conversations."

As earlier stated, both Mirkin and Pringle resided in Maine, and worked in UNUM's office in Portland, Maine. Although Morris has not particularized which of the eight grounds set out in G. L. c. 223A, § 3(*a*) through (*h*), the so-called "long-arm

statute," that she relies upon, we consider the two that seem most apt, even if not apparent: § 3(*a*) and (*d*).[6] To establish personal jurisdiction over Mirkin and Pringle under § 3(*a*) or (*d*), Morris was required to show that they regularly did business in Massachusetts or engaged in other conduct described in § 3(*d*). See *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 126 (2005); *Kleinerman* v. *Morse*, 26 Mass. App. Ct. 819, 824 (1989); *Darcy* v. *Hankle*, 54 Mass. App. Ct. 846, 849 (2002).

Morris's claims against Mirkin and Pringle, residents of Maine, are based on actions taken by them while transacting business as employees of UNUM at its Maine office. However, "jurisdiction over a corporation does not automatically secure jurisdiction over its officers," *Kleinerman* v. *Morse*, 26 Mass. App. Ct. at 824, or employees.[7] See *Roy* v. *Roy*, 47 Mass. App. Ct. 921, 921 (1999); *LaVallee* v. *Parrot-Ice Drink Prods. of*

---

[6]General Laws, c. 223A, § 3, as amended by St. 1969, c. 623, states in relevant part:

> "A court may exercise jurisdiction over a person . . . as to a cause of action in law or equity arising from the person's
>
> "(*a*) transacting any business in this commonwealth
>
> " . . . [or]
>
> "(*d*) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."

[7]Although far from clear, Morris's brief might be read generously to suggest that the dismissal of her claims against Mirkin and Pringle was erroneously based on the so-called "fiduciary shield" doctrine. Generally stated, that doctrine operates to limit or preclude the assertion of in personam jurisdiction over a nonresident corporate director and employees where the individual defendants' acts were undertaken in their corporate rather than personal capacity. See, e.g., *LaValle* v. *Parrot-Ice Drink Prods. of America, Inc.*, 193 F. Supp. 2d 296, 301 (D. Mass. 2002). Morris has not offered any decisions of the appellate courts of Massachusetts in which this doctrine has been explicitly or implicitly accepted or rejected, and numerous decisions of the Federal District Court for the District of Massachusetts have suggested that Massachusetts has not adopted the doctrine. See *Johnson Creative Arts, Inc.* v. *Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983); *Yankee Group,*

*America, Inc.*, 193 F. Supp. 2d 296, 300 (D. Mass. 2002). Rather, the question of personal jurisdiction over Mirkin and Pringle is to be decided on the basis of the nature and extent of their individual contacts with Massachusetts.

Once the question of personal jurisdiction was put in issue by Mirkin and Pringle, the burden was on Morris to establish that the assertion of jurisdiction was authorized by G. L. c. 223A, § 3, and would be "consistent with basic due process require-ments mandated by the United States Constitution." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 444 Mass. at 125. *Cepeda* v. *Kass*, 62 Mass. App. Ct. 732, 736 (2004). Morris, however, not only has failed to show any error apparent on the record before us, but also has omitted from her brief any discus-sion of Mirkin's or Pringle's contacts with Massachusetts as well as the statutory and constitutional standards applicable to a jurisdiction's assertion of in personam jurisdiction.

As shown on the record before us, Mirkin's role in UNUM's denial of Morris's claim consisted of a review of her medical records which he conducted in Maine, telephone calls from Maine to Florida, and the rendering of his opinion from Maine. Other than those activities conducted by Mirkin from Maine as an employee or agent of UNUM, Mirkin's activities, considered separately or collectively, fall far short of satisfying the "transacting business" requirement set out in § 3(*a*). See *Hahn* v. *Vermont Law Sch.*, 698 F.2d 48, 52 (1st Cir. 1983).

Pringle participated in two telephone calls with McIlvaine concerning Morris's condition and abilities. Pringle also sent two letters to McIlvaine in Massachusetts concerning Morris's condition and abilities. The first letter from Pringle, dated

*Inc.* v. *Yamashita*, 678 F. Supp. 20, 22 (D. Mass. 1988); *Trans Natl. Travel, Inc.* v. *Sun Pac. Intl., Inc.*, 10 F. Supp. 2d 79, 83 (D. Mass. 1988); *Interface Group-Mass., LLC* v. *Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003). Although there is some inferential authority that Massachusetts does not ac-cept this doctrine (see, e.g., *Kleinerman* v. *Morse*, 26 Mass. App. Ct. at 824; cf. *Haddad* v. *Taylor*, 32 Mass. App. Ct. 332 [1992]), the record before us provides an inadequate basis for consideration of the doctrine and its applicability. Put another way, Morris has failed to make any showing that the totality of the contacts of Mirkin and Pringle was a sufficient basis upon which we could conclude that they had submitted to the exercise of personal jurisdiction.

March 19, 1997, confirmed the substance of their telephone conversations. In the second letter, dated May 19, 1997, Pringle confirmed the outcome of her evaluation and the bases for the determination.[8] By a letter dated June 28, 1997, Pringle also responded to a letter that she had received from Morris.

Notwithstanding the limited amount of this "back and forth" correspondence, the record shows that Pringle's in-forum contacts amounted to a single, isolated consultation with a Massachusetts physician, McIlvaine, in the course of evaluating an individual's claim for benefits. As such, those contacts were not sufficiently substantial or continuous to confer personal jurisdiction in Massachusetts over Pringle under G. L. c. 223A, § 3(*a*). Compare *Droukas* v. *Drivers Training Academy, Inc.*, 375 Mass. 149, 153-154 (1978); *Intech, Inc.* v. *Triple "C" Marine Salvage, Inc.*, 444 Mass. at 126-127; *Stanton* v. *AM Gen. Corp.*, 50 Mass. App. Ct. 116, 119-120 (2000).

Morris's failure to establish a predicate for the assertion of jurisdiction under G. L. c. 223A, § 3(*a*) or (*d*), is fatal to her appeal and makes it unnecessary for us to consider any due process issues. See *Stanton* v. *AM Gen. Corp.* 50 Mass. App. Ct. at 121.

3. *The claims against UNUM.* In concluding that UNUM was entitled to summary judgment, the judge ruled that the language of the rider to the policy expressly and unambiguously excluded coverage for a disability due, in whole or in part, to a psychological condition even if the psychological condition that "contributed to" Morris's disability was itself caused or contributed to by an underlying physical condition, that is, chronic fatigue syndrome. She also ruled that the undisputed materials before her showed that depression had, at a minimum, "contributed to" Morris's disability.[9] Morris contends on appeal that whether depression caused or contributed to her disability

---

[8]Pringle's first letter prompted a written response from McIlvaine. After Morris's claim was denied, McIlvaine wrote two additional letters to Pringle.

[9]The judge also noted that UNUM's motion was effectively unopposed on the basis that Morris had failed to file a statement of material facts in compliance with Superior Court Rule 9A(b), which provides that "[f]or purposes of the motion for summary judgment, facts contained in [the moving party's statement of facts] *shall be deemed to have been admitted unless controverted in the manner set forth* [in Rule 9A(b)(5)]." *Sullivan* v. *Liberty Mut. Ins. Co.*,

was a disputed question of material fact that precluded summary judgment in favor of UNUM.

Morris does not challenge on appeal the judge's reading of the rider to the policy. Instead, she claims the existence of a disputed factual question concerning her disabling condition. Her argument is comprised of one sentence in which she simply asserts that whether her disability fell within the exclusion of the rider to the policy "is, in and of itself, a genuine issue of material fact precluding summary judgment for [UNUM]." Because this conclusory statement does not constitute appellate argument within the comprehension of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we do not consider it.[10] See

444 Mass. 34, 46 n.18 (2005). *Dziamba* v. *Warner & Stackpole LLP*, 56 Mass. App. Ct. 397, 399-401 (2002). UNUM put forth a well-pleaded and supported motion for summary judgment requiring Morris to put forth specific facts to support her claim of a physical disability within the terms of the policy and outside the exclusion of the rider to the policy. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). See also *SCA Servs., Inc.* v. *Transportation Ins. Co.*, 419 Mass. 528, 531 (1995).

As for the judge's refusal to consider those matters placed under seal by the Federal District Court, the judge noted that there was nothing that precluded Morris from filing another memorandum omitting all reference to material subject to the protective order of the Federal District Court or to obtain relief from that court. Morris had ample time to file a second memorandum that did not incorporate materials sealed by the Federal District Court or to obtain such relief. However, she made no attempt to do so.

The docket entries in this case show that UNUM sought summary judgment on May 2, 2001, that Morris filed a motion in the Superior Court seeking leave to cite to the materials sealed on June 4, 2001, that Morris's motion was denied on October 2, 2001, and that UNUM's motion for summary judgment was not decided until June 12, 2002. Morris was on notice as of October 2, 2001, that she would not be permitted to rely on the materials protected by the order of the Federal District Court. She had more than adequate time — a little more than eight months — to seek relief from the order sealing the information for the limited purpose of meeting UNUM's motion, but she failed to do so. There is nothing in the record before us that indicates that Morris ever sought or was denied leave to file a new or amended memorandum in opposition to UNUM's motion, and she does not contend otherwise. Her failure to do so cannot be attributed to error on the part of the judge. Cf. *Laubinger* v. *Department of Rev.*, 41 Mass. App. Ct. 598, 610 (1996).

[10]Although Morris appears to have argued before the judge that the rider would not exclude coverage if a psychiatric condition that caused or contributed to her disability was itself the product of a physical condition, i.e., chronic fatigue syndrome, and notwithstanding some support for her insistence that depression did not contribute to her disability, she makes no such argu-

*Zora* v. *State Ethics Commn.*, 415 Mass. 640, 642 n.3 (1993); *Yung* v. *Reymonde*, 433 Mass. 1001, 1002-1003 (2000).

4. *The claims against Poppo.* Morris asserted claims against Poppo for breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, negligent and intentional infliction of emotional distress, and violation of G. L. c. 93A. Her argument on appeal from the entry of summary judgment in favor of Poppo is based solely on the unsupported assertion that the cause of her disabling condition presents a disputed question of material fact.[11] As with her appellate contentions against UNUM, we decline to consider Morris's argument on this issue because it falls far short of compliance with the minimum requirements of Mass.R.A.P. 16(a)(4). In any event, it is far from evident as to how a disputed factual question regarding the nature of Morris's disabling condition would be material to the resolution of any one of her numerous claims against Poppo. See *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 364 (1993) ("For purposes of judging whether summary judgment ought to have been granted, the existence of disputed facts is consequential only if those facts have a material bearing on disposition of the case").

For all that appears on the record before us, the nature of Morris's disability is irrelevant to her claims against Poppo for breach of contract, negligent infliction of emotional distress, and violations of G. L. c. 93A. Those claims were based either on the theory that Poppo owed and violated legal duties to

---

ment on appeal. Again, the argument is waived.

Nor has Morris shown error in the judge's denial of her "emergency motion to submit new evidence" in support of her opposition to UNUM's motion for summary judgment. Neither Morris's memorandum in support of the motion nor the proffered materials, magnetic resonance images (MRIs), are included in the record before us. Moreover, we see no error in the judge's refusal to consider the MRI reports on the ground that they were unaccompanied by proffered expert evidence interpreting their results or explaining their relevance.

[11]The judge who granted Poppo's motion for summary judgment ruled that the materials submitted by Morris in opposition to Poppo's motion, subject to limited exceptions that cannot readily be determined from his memorandum, did not comply with the requirements of Mass.R.Civ.P 56(c) and (e), 365 Mass. 824, 825 (1974), and declined to consider them. Morris has not challenged that ruling on appeal. She also concedes that her claims against Poppo based on violations of G. L. c. 176D are properly subject to dismissal.

procure a disability policy from a "reputable" insurer or to intercede with UNUM on Morris's behalf after her claim was denied. As best we understand Morris's claims for fraud and misrepresentation, they were based on Poppo's alleged statements that the policy she sold to Morris was a "very good policy"; that UNUM had an "excellent reputation"; that "Morris would not have been able to purchase a disability policy without the Rider"; that Poppo had never been denied a claim in eighteen years; that after her claim was denied, Poppo stated that she "would do anything she could to help" Morris; and that Poppo had assured her that UNUM considered chronic fatigue syndrome to be an illness covered under its policy. On this last point we note that the dispute between Morris and UNUM did not turn on whether UNUM considered chronic fatigue syndrome to be within the coverage of the policy. Rather, the controversy centered on whether Morris's disability was caused, in whole or in part, by depression. Morris's allegations of a breach of fiduciary duty and the intentional infliction of emotional distress by Poppo have insufficient support in the record before us to allow for any reasonable determination of the act or omission giving rise to those claims.

5. *Conclusion.* It follows from what we have said that the amended final judgment is affirmed.

*So ordered.*